IOWA MAUSOLEUM COMPANY, Appellee, v. T. B'. WRIGHT, Appellant.

**APPEAL AND ERROR:** Directed Verdict—Motion for—Failure to
1  Renew—Waiver. He who moves for directed verdict before the
close of all the evidence in the case, suffers an adverse ruling
and fails to renew the motion at the close of all the evidence,
waives any possible error in the former ruling.

**FRAUDS, STATUTE OF:** Sale of Real Estate—Crypt in Mausoleum
2  —Documentary Evidence. Assuming that the sale of a crypt in
a mausoleum is a sale of real estate, *held* that the documentary
writings sufficient to satisfy the statute of frauds were fur-
nished (a) by the written contract, (b) by the written specifica-
tions, (c) by the written report of the engineers thereon, (d) by
the written correspondence in reference thereto signed by the
defendant, followed by the construction of the crypt in accord-
ance with said specifications.

**CONTRACTS:** Signing—Conflict of Evidence—Record Not Show-
3  ing. Where the signing of a certain letter was material to de-
fendant's liability on his former contract, *held* that the record
presented no conflict as to defendant's signature, one witness
testifying that he saw defendant sign said letter, defendant
testifying that the signature looked like his signature, but he
had no remembrance of signing it.

**CONTRACTS:** Repudiation—Repentance. One who enters into a
4  written contract, subsequently repudiates the same, and still
later enters into negotiations with the other party and insists
on certain changes, which are granted, and the contract completed
in accordance therewith, has no defense to the entire contract
price—can no longer insist on his attempted repudiation. So
held in regard to the building of a mausoleum.

*Appeal from Shenandoah Superior Court.*—HON. GEO. H.
CASTLE, Judge.

SATURDAY, JUNE 19, 1915.

ACTION upon a contract. Directed verdict for plaintiff. Defendant appeals.—*Affirmed.*

*Frederick Fischer* and *Roy E. Havens*, for appellant.

*Earl R. Ferguson* and *C. R. Barnes*, for appellee.

*Per Curiam.*—The action is upon the following contract:

EXHIBIT "A"

The Iowa Mausoleum Company, Waterloo, Iowa.
Price of Compartments $150.00 each.

Shenandoah, Iowa, Nov. 16, 1910.

I, T. B. Wright, hereby subscribe for four compartments in the GRAND COMPARTMENT MAUSOLEUM to be constructed in the City of Shenandoah, Iowa, according to the plans drawn by the Iowa Mausoleum Company, on file at Ferguson's office for which I agree to pay the Iowa Mausoleum Company, or order, the sum of Six hundred Dollars as follows: One-third when foundations are in; one-third when walls and compartments are constructed to the square, and balance when roof is on and all work is completed. It is further agreed that above company will give a deed for the compartments herein subscribed when payment is made in full and building is dedicated. Payable at First National Bank, Shenandoah, Iowa.

T. B. Wright.
The Iowa Mausoleum Company,
By C. L. Langley, Special Representative.

Thereafter the defendant sent to the plaintiff the following letter:

Shenandoah, Iowa, July 24, 1911.

Iowa Mausoleum Company, Waterloo, Iowa. Dear Sirs: November 16th, 1910, I subscribed for four compartments conditionally in a mausoleum to be erected in Shenandoah,

Iowa, on the verbal representations of your Mr. Langley.
Recent investigation has revealed the fact that the building
is to be built quite different from what I was led to expect
and will not be a permanent and lasting building that one
must be in order to have any value when it is to be used for
such a purpose.  For reasons given above I wish to withdraw
my contract and will ask you to kindly cancel the same and
return said contract to me at once.  Respectfully,

T. B. Wright.

On the same day, but after the letter by defendant, as
we understand it,—though the record is not clear as to this,—
a committee of crypt holders, of which the defendant was a
member, wrote to the plaintiff as follows:

EXHIBIT ''B''

(Omitting letter head.)

Shenandoah, Iowa, July 24, 1911.

Iowa Mausoleum Company, Waterloo, Iowa.    Gentle-
men:—On the 19th inst., your engineer, Mr. J. B. Balcomb,
was in Shenandoah and called a meeting of the compartment
or crypt holders in the mausoleum you are to build here in
Shenandoah.    The crypt holders insisted on being fully in-
formed as to the plans and specifications for the proposed
building, and asked that a committee from their number be
allowed to inspect the plans and specifications and submit
them to some competent engineer for his approval.    Your
Mr. Balcomb consented to this and the undersigned commit-
tee was appointed and the plans and specifications so far as
Mr. Balcomb had the same were turned over to this commit-
tee.    This committee selected a well known firm of consulting
engineers and submitted the plans and specifications that
had been turned over to it to the engineers.    We have just
received their report and are enclosing a copy herewith except
that we are not giving the names of the engineers, preferring
for the present to withhold the names.    You will note that
the engineers in their report state that no specifications what-

ever were turned over to them and that they cannot make a full and complete report without full and complete plans and specifications. This committee turned over to the engineers everything they had received from your Mr. Balcomb, and supposed that they had the full and complete specifications and plans. The report of the engineers is virtually useless the way it stands, as you will admit.

We wish you would send us immediately the complete plans and specifications and all the data called for in the report of the engineers. As soon as we receive the full and complete plans and specifications we will turn them over to our engineer and get a report just as soon as possible. We feel sure that you do not want any delay in this matter and we certainly are anxious to have the information as soon as we can. Your Mr. Balcomb promised that no work would be begun on the mausoleum until our committee could consult an engineer, get his report and submit the report to the crypt holders. Of course you will admit that this is only fair. We mention this as we do not want any work commenced until we can get a full and complete report from our engineers and submit it to the crypt holders.

Trusting that we may hear from you with the proper plans and specifications at an early date, we are, very truly yours,

(Signed)                          J. J. Cardwell,
                                  T. B. Wright,
                                  A. W. Murphy.

The plaintiff did not consent to the attempted rescission of the contract by defendant, but on July 26, 1911, in response to defendant's letter of the 24th, first above set out, in which plaintiff expressed surprise at the contents of defendant's letter, stated that they expected to build the mausoleum in accordance with the agreement, and stating that they realized that influences had been at work adverse to the plaintiff and that an attempt had been made to injure it wherever possible by misrepresenting the facts; but that they expected to abide

by the terms of the agreement and expected the purchasers to do the same.

On July 19, 1911, there was a meeting of the crypt holders, at which defendant was present, and he participated in the proceedings. The plans were discussed and questions were asked of the representative of the plaintiff company, who stated that the original plans had proved defective in some instances and that he had a better plan. At this meeting, the plaintiff's engineer was asked if he cared if the plans were examined by someone else, and he said there would be no objection. Thereupon, the names of the defendant, Mr. Cardwell and Mr. Murphy were suggested as a committee. It is shown that at this meeting the matter was thoroughly discussed regarding the building. The plans were submitted to architects at Omaha, Nebraska, who made two reports. In the last one, they suggested certain changes, and stated:

"The mausoleum constructed as planned and specified will be a credit to your city, and will endure for centuries, but rigid inspection is absolutely essential to achieve this result."

The mausoleum in question was built in accordance with the plans as modified and suggested by the Omaha architects, and we are satisfied from the record that there was a substantial compliance therewith, and this was done without any further objection from the defendant. There is no evidence that the building as erected will not be a permanent and lasting building, as defendant claimed in his letter of the 24th it would be.

1. At the close of plaintiff's testimony, defendant moved for a directed verdict in his favor, which was overruled. Thereupon he introduced his testimony. It is now argued that the court erred in overruling this motion. But the motion was not renewed at the close of all the testimony. Under such circumstances, we do not review the assignment based upon such ruling.

1. APPEAL AND ERROR: directed verdict: motion for: failure to renew: waiver.

2. It is thought by appellant that the sale of a crypt is a sale of real estate and that, unless in writing, is within the statute of frauds.  Without determining the question as to whether such a contract is one for the crea-

2. FRAUDS, STAT-
UTE OF: sale
of real estate:
crypt in mau-
soleum: docu-
mentary evi-
dence.

tion for the transfer of an interest in land, we think the plaintiff's case was proven by documentary evidence.  This documentary evidence shows this situation: Plaintiff and defendant entered into a written contract, as claimed by plaintiff.  On July 19th, there was a meeting of the crypt holders, at which a committee was appointed, consisting of defendant and two others.  The plans, which were present at that meeting, were turned over to this committee, one of whom took them to engineers at Omaha.  These engineers wrote a report in which they asked for fuller specifications. This report was forwarded to plaintiff, with a letter signed by defendant, requesting full specifications in compliance with the request of the engineers.  The plaintiff furnished the requisite data.  From this, the engineers made a report, suggesting certain changes, and, in addition, made certain red marks upon the plans suggesting slight changes.  These plans and specifications, together with the report of the engineers, were turned over to the plaintiff.  The plaintiff built the mausoleum in conformity with the plans and specifications, as changed by the engineer selected by defendant and the other crypt holders.  Such was the situation when plaintiff rested.  The witnesses for defendant testified to substantially the same state of facts and at many points corroborated the testimony for plaintiff.

3. It is thought by defendant that there is a conflict in the testimony as to whether he signed the letter which purports to be signed by the committee.  A witness for plaintiff

3. CONTRACTS:
signing: con-
flict of evi-
dence: record
not showing.

testified that the signatures attached thereto are those of Cardwell, Murphy and defendant, T. B. Wright; that Mr. Wright signed it in his presence.  The defendant himself was called as a witness for plaintiff and said that the signature

"looks like my signature, Mr. Cardwell's signature and Mr. Murphy's signature. I have no recollection of signing the instrument and I do not remember the incident." This does not amount to a denial of the testimony of the witness who testifies that he saw defendant sign it, and there is no conflict at this point.

4. The real question in the case, we take it, is the effect of the letter of July 24th, by which the defendant attempted to rescind his contract. We have not been favored with citation of authority by either side on this point. No fraud was alleged or proven as ground for a rescission of the contract. Plaintiff has not sued for a breach of the contract, but to recover the contract price for performance of the contract by it.

4. CONTRACTS: repudiation: repentance.

In *Port Huron Machinery Co. v. Hurto*, 154 Iowa 435, in speaking of the right to recover upon a contract for the sale of personal property, the court, at page 437, said:

"The authorities generally are not agreed on the question whether there can be a recovery of the contract price where the contract is not fully executed by the transfer of title; but it is the general holding that the mere retention of possession by the vendor is not material. There may be a little confusion in our own cases on the question whether the retention of title by the vendor necessarily remits him to an action for damages alone, because of language used in one or two opinions. But we think an examination of the cases will show that, where the issue was directly involved, we have never held that in such cases there cannot be a recovery of the contract price; while, on the contrary, we have directly held that such recovery can be had, although neither title nor possession have passed to the vendee. In *McAlister v. Safley*, 65 Iowa 719, a written order for a granite monument was given to the plaintiff's assignors, Webster & Williams, by the defendant and accepted by said Webster & Williams. Before anything had been done by Webster & Williams to-

ward completing the monument or delivering it, the defendant notified them that she would not receive it, and requested them not to complete it.   It was also shown that at the time the contract was entered into, Webster & Williams were the owners of the monument and had it in their possession, and that it was wholly completed except the cutting of the inscription that had been directed by the defendant.   On the facts as above recited, this court said:

" 'On this state of facts, we think there can be no question of defendant's liability for the contract price of the monument.   It may be conceded that the contract was executory and that the property in the monument did not vest in defendant upon the execution and delivery of the written agreement.   But neither of the parties reserved a right of rescission.   Defendant's undertaking to pay the stipulated price was contingent on the single condition that Webster & Williams would cut the inscription on the monument, deliver it at Traer, and set it up at the grave of her husband.   She agreed absolutely that upon the happening of these conditions she would pay the price agreed upon at the stipulated time. There was no failure on their part to perform their undertaking.   She, therefore, had no grounds for rescinding the contract.'

"The law will not permit one party to an agreement to terminate it at his pleasure, unless the right to do so is reserved in the contract itself."

Plaintiff did not consent to the attempted rescission, but insisted upon performance by defendant, and it performed its part and built the mausoleum according to the contract as modified by the defendant and his associates, the other crypt holders.   We do not understand the parties to dispute the proposition that defendant's letter of July 24th would have been a breach of the contract and that plaintiff could have sued for the breach.   It did not do this, but was insisting all the time upon performance.   In this case, no time was fixed

when the mausoleum should be completed or when the work should begin. Defendant's repudiation was before the time for the completion of the contract. The cases recognize the doctrine that where the repudiation is premature, and there is time for repentance or change of mind, and a withdrawal of the repudiation, the plaintiff would not be required to treat as final defendant's refusal to perform his part of the contract.

We think, under the evidence in this case, there was a change of mind on the part of defendant after his letter of July 24th. Thereafter, as one of the committee, he insisted upon certain concessions by plaintiff in the construction of the building. Changes in the plans were made, and thereafter plaintiff built the mausoleum in accordance with the plans as so changed, without further objection on the part of defendant. Under such circumstances, after the building is completed, defendant may not now rely upon his attempted repudiation of the contract. This is the ground on which we affirm.

In *Davis v. Bronson*, 16 L. R. A. 655, the question was discussed. That was a case where, defendant having refused to perform a contract for the erection of a creamery by plaintiffs before they had entered upon the performance thereof, it was held that an action to recover the contract price would not lie, although plaintiffs had, notwithstanding defendant's refusal to perform, completed the creamery according to contract; that the remedy was for damages for breach of the contract. But in that case, there was no evidence of the change of mind indicating a withdrawal of the objection by defendant to a performance of the contract. The cases cited in the opinion and note recognize the doctrine of repentance or change of mind.

Other errors are assigned, but defendant merely says in argument that, ''While we will not discuss each of the errors assigned, it is not our intention to abandon any of them.'' We think the exhibits were properly admitted in evidence.

The points we have discussed determine the case. We think there was no error, and the judgment is, therefore,—*Affirmed.*

DEEMER, C. J., EVANS, WEAVER and PRESTON, JJ., concur.